# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN E. CHRISTNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil Action No. 08-991** |
| ) | |
| MICHAEL J. ASTRUE, ) | **Judge Nora Barry Fischer** |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I.      INTRODUCTION

Plaintiff, John E. Christner ("Christner" or "Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f.  The parties have filed cross-motions for summary judgment, together with supporting briefs, pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level.

### II.     PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI benefits on May 9, 2006, alleging disability since April 1, 2005, due to mental and emotional problems. (Docket No. 7 at 160-66, 187, R. at 156-62, 183); (hereinafter "R. at ___").  Plaintiff's claims were initially denied, and he filed a timely request for an administrative hearing. (R. at 103-25).  A hearing was held on October 18, 2007, in Johnstown, Pennsylvania, before an Administrative Law Judge ("ALJ"). (R. at 63-99).  Plaintiff was represented by counsel at the hearing, during which he appeared and testified. *Id*.  A Vocational Expert ("VE") was also present and gave testimony. *Id*.  The ALJ issued an unfavorable decision on November 30, 2007, finding that Plaintiff was "not disabled" within the meaning of the Act. (R. at 45-59).  The ALJ's decision became the Commissioner's final decision when, on June 6, 2008, the

Appeals Council denied Plaintiff's request for review. (R. at 1-3). Plaintiff commenced the instant action on July 14, 2008, seeking judicial review of the Commissioner's decision. Plaintiff filed a motion for summary judgment on October 24, 2008. (Docket No. 12). The Commissioner's motion was filed on November 10, 2008. (Docket No. 14).

### III. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 USC § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 USC § 423(d)(2)(A).

To support his ultimate findings, an ALJ must do more than state factual conclusions. *Baerga v. Richardson*, 500 F.2d 309, 312-313 (3d Cir. 1974). He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and must provide adequate explanations for disregarding or

2

rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 USC § 405(a), has developed a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R.] §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

If it is shown that the claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

**IV.     STATEMENT OF THE CASE**

Plaintiff was born on January 27, 1984. (R. at 156). He was twenty-two (22) years old at the time of his application for benefits and twenty-three (23) years old at the time of the ALJ's decision.

(R. at 156, 45-59). Under the Commissioner's regulations, applicants under the age of fifty (50) are considered "younger individuals" and their age is not considered a significant impediment to adapting to new work situations. 20 C.F.R. § 416.963. Plaintiff graduated from high school, had one year of automotive training at a community college, and expressed an intention to obtain a culinary arts degree. (R. at 188, 247-48, 78). Plaintiff's past employment includes work as a cashier, clerk, cook, donut fryer, laborer, packer, and telemarketer. (R. at 184). Plaintiff was fired from every job he had ever had. (R. at 181, 205). He lives with his wife, son, and twin girls. (R. at 68, 203).

Beginning on January 14, 2005, Plaintiff was treated at Westmoreland Regional Hospital Comprehensive Counseling Center for his problems with excessive rage and anger. (R. at 262-80; 318-335). Initially, he was not interested in therapy or anger management, but sought to control it with medication only. (R. at 273). On April 28, 2005, he was assessed as having a Global Assessment of Functioning ("GAF")[1] of 50. (R. at 271).

A Pennsylvania Department of Public Welfare form was completed for Plaintiff by Alvaro Barringer, Ph.D., on May 18, 2006, indicating that Plaintiff was permanently disabled, with a primary diagnosis of schizophrenia, disorganized type, and a secondary diagnosis of major depressive disorder, recurrent. (R. at 238). Dr. Barringer's assessment was based upon Plaintiff's clinical history. *Id.*

From May to June, 2006, Plaintiff attended weekly counseling sessions with a psychology intern, Michele R. Konopisos, MA, at the Counseling Center in Greensburg, Pennsylvania. Ms. Konopisos opined in a letter to the Bureau of Disability Determination that Plaintiff was unable to work with a diagnosis of schizophrenia, undifferentiated type, and a GAF of 35.[2] (R. at 240). A form accompanying the letter denoted marked limitations in Plaintiff's ability to interact appropriately

---

[1] The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-R) (4th ed. 2000). A score between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job). *Id.* (emphasis in original).

[2] A GAF score between 31 and 40 indicates some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment thinking, or mood (e.g. depressed man avoids friends, neglects family and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-R) (4th ed. 2000) (emphasis in original).

4

with supervisors and co-workers, respond appropriately to work pressures, and respond appropriately to changes in a routine work setting. (R. at 241).

On August 8, 2006, Tim Bridges, Ph.D., performed a consultative evaluation of Plaintiff. (R. at 244-50). Dr. Bridges' assessment notes Plaintiff has had suicidal tendencies since the death of his mother in February 2006, and also reported hallucinatory and delusional activity. (R. at 249). Dr. Bridges rated Plaintiff's self-control as poor. *Id*. Dr. Bridges' report indicated that Plaintiff feels as though his condition has improved after one month of counseling. *Id*. Dr. Bridges suspected possible malingering with respect to Plaintiff's job difficulties and hallucinatory and delusional activity. *Id*. Dr. Bridges diagnosed major depressive disorder, recurrent and assessed a GAF of 35. (R. at 250). On an accompanying form, Dr. Bridges indicated Plaintiff had moderate limitation in interacting appropriately with supervisors, and slight limitation in interacting appropriately with co-workers, responding appropriately to work pressures, and responding appropriately to changes in a routine work setting. (R. at 244).

Plaintiff voluntarily admitted himself for treatment at Westmoreland Regional Hospital on August 10, 2006, after an unsuccessful attempt on the part of his wife to have him involuntarily committed. (R. at 255-56, 259). The commitment was the result of a suicide threat in which Plaintiff left a note for his family and was planning on overdosing on pills, although he did not ingest any. (R. at 255, 259). Plaintiff was diagnosed with psychotic disorder not otherwise specified and his GAF was rated as 30[3] on admission. (R. at 261). Plaintiff's GAF was rated as 45 on discharge of August 13, 2006. (R. at 255). Plaintiff was prescribed Geodon and Trazodone. *Id*. On a follow-up visit on August 29, 2006, Plaintiff's GAF was rated as 60.[4] (R. at 269).

A mental residual functional capacity assessment form and a psychiatric review technique

---

[3] A GAF score between 21 and 30 indicates behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g. stays in bed all day, no job, home or friends). *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-R) (4th ed. 2000) (emphasis in original).

[4] A GAF score between 51 and 60 indicates some moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (e.g. few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-R) (4th ed. 2000) (emphasis in original).

form regarding Plaintiff were completed on October 5, 2006, by Roger Glover, Ph.D. (R. at 300-17). Based on the medically determinable impairments of major depressive disorder and psychotic disorder, Dr. Glover determined that Plaintiff experienced mild to moderate limitation in the functions of daily living, social functioning and maintaining concentration, persistence or pace, with one or two episodes of decompensation. (R. at 314). On the mental residual functional capacity assessment Dr. Glover rated Plaintiff as either not significantly limited or moderately limited in the four categories and twenty subcategories designed to facilitate assessing residual functional capacity on the form. (R. at 300-01). Dr. Glover concluded, based upon his review of the record, that Plaintiff can perform the basic mental demands of competitive work on a sustained basis. (R. at 302). Dr. Glover further offered that Plaintiff would be able to understand and remember instructions, interact appropriately with people, adapt to changing activities within the workplace, maintain regular attendance and be punctual, and that Plaintiff is capable of asking simple questions and accepting instruction. *Id*. Dr. Glover also noted that Plaintiff can function in production oriented jobs requiring little independent decision making. *Id*. Dr. Glover found Plaintiff's statements to be partially credible based upon the evidence of record. *Id*. Dr. Glover stated that Dr. Bridges' report was considered and is viewed as a generally accurate description of Plaintiff's mental state and functional capacity, and that the report was given appropriate weight in his assessment. (R. at 303).

On September 26, 2007, Plaintiff was involuntarily committed upon petition of his wife to Westmoreland Hospital due to his anger and uncontrolled rage. (R. at 337-49). Plaintiff was prescribed Abilify. (R. at 343). On discharge of October 1, 2007, Plaintiff's diagnoses were mood disorder, NOS, and intermittent explosive disorder, Plaintiff's GAF was rated at 50, and Plaintiff's prognosis was listed as guarded. *Id*.

On October 12, 2007, Plaintiff began treatment at Kreinbrook Psychological Services. (R. at 351, 352-58). Plaintiff sought treatment for anger and temper control issues. (R. at 352). Plaintiff's GAF was rated at 50 at the initial evaluation. (R. at 358). On a form completed on November 15, 2007, by a pre-doctoral psychology intern at Kreinbrook, Plaintiff was indicated as having moderate restriction in his ability to interact appropriately with supervisors and co-workers, and in responding appropriately to work pressures and changes in a routine work setting. (R. at 363). Dr. Kreinbrook signed off on this evaluation. *Id*.

6

According to his disability report, Plaintiff's daily activities include doing hobbies, which consist mainly of playing video games and building models, as well as spending time with his family. (R. at 203, 205). He is also able to do some light housework and some cooking. (R. at 203-04). In addition, about three times per month he "hangs out" with relatives or friends. (R. at 204).

A hearing was held on October 18, 2007, in Johnstown, Pennsylvania before an ALJ. (R. at 63-99). Plaintiff appeared with the assistance of counsel and testified about his past work experience, his psychiatric treatment, and his activities of daily living. *Id*. A vocational expert also attended the hearing and gave testimony. (R. at 93-98). The testimony of the VE indicated that a hypothetical individual sharing Plaintiff's restrictions and limitations could perform work existing in the national economy as a laundry sorter, bagger in a dry-cleaner or laundry, or racker in a bakery. *Id*. Plaintiff's attorney asked the VE if competitive employment would be compromised if the hypothetical individual left the work station for three or four minutes three times a day not during a break, to which the VE responded affirmatively. (R. at 97-98). The VE also testified, on examination by Plaintiff's attorney, that if the hypothetical individual were to be yelling and hollering or swearing while employed, and if this behavior were not correctable, it would compromise competitive employment. (R. at 98).

The ALJ issued a decision disfavorable to Plaintiff on November 30, 2007. (R at 45-59). The ALJ used the five-step process described above and outlined by the Social Security Act to evaluate Plaintiff's claim. 20 C.F.R. § 404.1520(a). After determining that Plaintiff had met the insured status requirements of the Act through March 31, 2007, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, the ALJ found Plaintiff's "major depressive disorder, history of schizophrenia, history [of] psychotic disorder, not otherwise specified, history of asthma, bronchitis, obesity, and adult-onset diabetes mellitus" to be severe impairments within the meaning of the Regulations, but did not meet or medically equal, either singly or in combination with other alleged impairments, any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (R. at 50-51). The ALJ then determined that Plaintiff's residual functional capacity ("RFC")[5] was such that, given certain

---

[5] Residual functional capacity is "what [the claimant] can still do despite his limitations." 20 C.F.R. § 416.945(a).

7

restrictions to accommodate Plaintiff's limitations due to his impairments, he would be able to perform regular work at the light exertional level, avoiding concentrated exposure to fumes, odors, dusts, gases, chemical irritants, and environments with poor ventilation, requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes, requiring no more than occasional interaction with supervisors, co-workers, and members of the general public. (R. at 52).

In reaching this conclusion, the ALJ evaluated Plaintiff's impairments under Listings 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders in Appendix 1, Subpart P, Regulation No. 4. (R. at 55-56). The ALJ likewise considered Plaintiff's reported activities of daily living, including social functioning, as well as Plaintiff's subjective complaints, and his credibility while testifying at the administrative hearing. (R. at 52-57). Finally, the ALJ reconciled his conclusion of Plaintiff's residual functional capacity with all the medical evidence contained in the record. (R. at 56-57). Noting that Plaintiff is a "younger individual" as defined in the Regulations with a high school education and ability to communicate in English, the ALJ concluded that jobs exist in the national economy suitable for Plaintiff, taking the limitations caused by his impairments into consideration, and, thus, the ALJ found Plaintiff to be not disabled as defined by the Act. (R. at 57-58).

**V.      DISCUSSION**

Plaintiff argues that the ALJ's decision does not adequately explain his assessment of Plaintiff's RFC. (Docket No. 13 at 2). Plaintiff also avers that the ALJ erred by failing to include required findings relating to mental functioning in the hypothetical questions posed to the VE at the administrative hearing. *Id*. at 14. Defendant argues that substantial evidence supports the ALJ's RFC assessment and that the ALJ's hypothetical question to the VE fairly accounted for Plaintiff's functional limitations. (Docket No. 15 at 11, 14).

As noted above, the ALJ assessed Plaintiff's RFC to permit light work subject to certain restrictions. Plaintiff first attacks the validity of this assessment by arguing that the ALJ did not adequately explain his reasons for rejecting evidence by Dr. Barringer, the Comprehensive Counseling Center, Westmoreland Hospital, and Kreinbrook Psychological Services. (Docket No. 13 at 4-10). Plaintiff asserts that the ALJ discounted the evidence as unsupported by objective

8

evidence, but did not properly weigh the evidence, improperly rejected evidence as not being from an acceptable medical source, and did not give adequate consideration to Plaintiff's GAF scores in the record. *Id*. Initially, the Court notes, that to accept Plaintiff's argument would require the Court to re-weigh the evidence of record, which this Court is not empowered to do in these proceedings. *Monsour Medical Center,* 806 F.2d at 1190.

Secondly, the Court further notes that the ALJ's decision contains a comprehensive and exhaustive analysis of all the medical evidence encapsulated in the longitudinal record, and provides a detailed explanation of how the evidence supports his ultimate conclusion. (R. at 52-57). Far from failing to properly weigh the evidence or improperly rejecting evidence, the ALJ's decision clearly indicates the evidence relied upon to support the findings contained therein, and when evidence is rejected, the reasons for doing so are likewise made clear. The rejection of Dr. Barringer's opinion that Plaintiff is permanently disabled as evidenced by a box checked on a welfare form is explained as being unsupported by objective findings and as being based upon a less restrictive standard of disability. (R. at 57). Indeed, the Court finds no other medical opinion in the record to corroborate Dr. Barringer's belief, other than that of a psychology intern, which the ALJ found to be an unacceptable medical source. *Id*. Thus, it is clear that the ALJ did weigh the evidence. Furthermore, the Public Welfare Department's standard of disability does not mirror that of the Act, and therefore a finding of permanent disability under the former does not mandate the same finding under the latter. *See* 20 C.F.R. § 404.1504 ("A decision by any non-governmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us."). An opinion that a claimant is "disabled" or "unable to work" is not dispositive or entitled to special deference. *See Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994); 20 C.F.R. §§ 404.1527(e), 416.927(e). Disability determinations are the province of the ALJ. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2).

Plaintiff argues that the ALJ improperly rejected evidence from the Comprehensive Counseling Center as not being from an acceptable medical source. (Docket No. 13 at 6). However, the ALJ makes clear that "this medical source statement offered little objective analysis to support

9

the conclusions," as well as being completed by an intern. (R. at 57). Thus, Plaintiff's argument is untenable. Notably, however, while arguing that the ALJ erred in rejecting this evidence, Plaintiff points to no objective support in the record to invalidate the ALJ's reason for rejecting it. The Court finds no error in the ALJ's assigning the opinion a reduced level of weight.

Plaintiff's contention that the ALJ erred in failing to give adequate consideration to the GAF scores contained in the record is likewise without merit. (Docket No. 13 at 7-10). Plaintiff fails to cite any authority stating that a GAF assessment of 50 or lower mandates a finding of disability. Plaintiff's brief cites *Sousa v. Chater*, 945 F.Supp. 1312, 1326 (E.D.Cal. 1996), for the proposition that a GAF of 50 is indicative of an individual "likely experiencing great difficulty functioning in the workplace." *Id*. While it is true that the Court in *Sousa* did state that in *dicta*, it had no bearing on the holding in that case, which was a denial of benefits because the claimant's substance abuse was a significant contributing factor to her mental impairment. Furthermore, that citation is from a non-precedential opinion from the United States District Court for the Eastern District of California, and was subsequently reversed. *See Sousa v. Callahan*, 143 F.3d 1240 (9th Cir. 1998). As such, it offers little to inform the decision on the case presently before this Court. Plaintiff's reliance on *Boston v. Chater*, 1995 WL 708552 (E.D.Pa. November 28, 1995), is similarly misplaced. In that non-precedential opinion, albeit from a district court in this Circuit, an award of benefits was not awarded to the claimant based on a GAF rating of 50, but rather the GAF score was one piece of evidence among many that the magistrate judge considered in finding a mental disability, which, in combination with the claimant's physical, exertional impairment resulted in the award of benefits. *Id*. at *4-6. The case is thus distinguishable from the instant matter. Plaintiff further relies on *Cressman v. Astrue*, 2007 WL 2248832 (E.D.Pa. August 1, 2007), and the passage "GAF scores constitute medical evidence that is accepted and relied on by physicians, and that where an ALJ fails to explain why the scores have been discounted, a remand is necessary" to support his position. *Id*. at *2. However, in *Cressman*, unlike in Plaintiff's case, "the ALJ did not include any review of the GAF scores in her decision and thus failed to explain her apparent rejection of this medical evidence of serious impairment." *Id*. Such is not the case here. While Plaintiff's GAF scores are admittedly consistently low, the ALJ does not fail to recognize this, and also explains his reasons for reaching his conclusion despite the low GAF scores in his decision. (R. at 54). The Court

also observes that the record contains one GAF score of 60. (R. at 269). Furthermore, the Social Security Administration has explicitly declined to endorse the use of the GAF scale because its scores do not have a direct correlation to the disability requirements and standards of the Act. *See* 65 Fed.Reg. 50746, 50764-65 (August 21, 2000). Low GAF scores may relate to factors unrelated to the ability to maintain gainful employment, for example, as in this case, a threat of suicide. "[A] GAF score, without evidence that it impaired the ability to work, does not establish an impairment." *Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 383 (E.D.Pa. May 21, 2008) (citing *Camp v. Barnhart*, 103 Fed.Appx. 352, 354 (10th Cir. 2004)). Thus, the GAF scores are not necessarily indicative of Plaintiff's inability to work.

Plaintiff also argues that the ALJ does not explain what evidence supports his RFC assessment. (Docket No. 13 at 10-14). Plaintiff asserts that the ALJ does not clearly and concisely state affirmative reasons for his RFC assessment, leaving one to "comb the section of the decision discussing the RFC assessment in search of them." *Id*. at 10. Even if Plaintiff were correct, it is difficult to see how this constitutes reversible error. It is not the function of this Court to critique the stylistic components of ALJ decisions, but only to ensure that the decisions are supported by substantial evidence. Essentially, however, Plaintiff's argument boils down to nothing more than the frequently advanced, rarely successful argument that consists of reiterating the evidence contained in the record and insisting that a different result is warranted. The argument is rarely successful for a reason. The standard as to factual determinations is highly deferential. As has so often been stated, a district court is bound by the ALJ's findings so long as those findings are supported by substantial evidence, even if the district court would have reached a different factual conclusion. *Hartranft*, 181 F.3d at 360. The ALJ finds support for his RFC assessment in the consultative evaluation of Dr. Bridges, treatment records from Dr. Kreinbrook, records from Westmoreland Outpatient Health and Plaintiff's activities of daily living. (R. at 52-57). Where the ALJ rejects medical evidence in the record, or assigns such evidence diminished weight, he supplies adequate reasoning for doing so. *Id*. The posture and style in which the ALJ structured this section of his decision is of no concern to the Court. As to Plaintiff's insistence that the evidence be reevaluated here to reach the antipodean result, the Court is powerless to do so. As has been stated above, and is by now axiomatic, the Court may not re-weigh the evidence of record. This Court does

not find the ALJ's decision to lack the support of substantial evidence. Nor can it be said that the result is unreasonable.

Plaintiff's final assignment of error is that the ALJ failed to include required findings relating to mental functioning in his hypothetical questioning of the VE. (Docket No. 13 at 14-15). Plaintiff relies on the Third Circuit opinion in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) to suggest that the ALJ not only failed to include properly found limitations in the hypothetical questions posed to the VE, but that the ALJ willfully defied the Third Circuit's holding in that case.[6] (Docket No. 13 at 14-15). Plaintiff then goes on to quote the following passage from the ALJ's decision:

> The limitations identified in the "paragraph B" and "paragraph C" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Accordingly, the undersigned has translated the above "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment below.

(R. at 52).

The Court can accede neither to Plaintiff's reading of *Ramirez* nor to Plaintiff's assignment of error. *Ramirez* is distinguishable from the instant matter in that the record in *Ramirez*, as well as the ALJ's own observation in that case, called for a particularized accommodation that was not included in the ALJ's hypothetical to the VE, specifically that the claimant's employment location be in close physical proximity to the location of claimant's children. *Ramirez*, 372 F.3d at 555. Such a limitation was not adequately represented in the hypothetical question in that case. *Id*. The *Ramirez* Court suggested, however, that cases where greater specificity in the hypothetical questioning is required occur where additional specific deficiencies in concentration, persistence, and pace are clearly established in the record and can not be properly conveyed in a hypothetical limited to simple tasks. *Id*. at 554. In *Ramirez*, the record clearly demonstrated the need for more specificity. *Id*. at 555. Such is not the case here. The Court finds that the ALJ incorporated all of

---

[6]The Court takes this opportunity to point out that the *ad hominem* attacks on the ALJ found throughout Plaintiff's brief are not warranted.

Plaintiff's credibly established work-related limitations in his hypothetical questioning of the VE. The Court therefore finds that substantial evidence supports his decision.

While the present motions were pending, the United States Court of Appeals for the Third Circuit issued a precedential opinion styled *Brownawell v. Commissioner of Social Security*, 2008 WL 5147953 (3d Cir. December 9, 2008), wherein the Appeals Court directed the District Court to award claimant benefits because the ALJ's decision was not supported by substantial evidence. *Id.* at *4. In *Brownawell*, the Appeals Court found that the ALJ improperly rejected the opinions of the claimant's treating physician and a consultative psychological examiner who evaluated the claimant and credited the opinion of a non-examining psychologist in finding that the claimant was not disabled. *Id.* at *3. In reversing the ALJ's decision, the Court of Appeals noted that the ALJ based his decision "in large part on evidence that does not exist," and that he "mischaracterize[d] the evidence that does exist." *Id.* at *4. Furthermore, the Court of Appeals found that the opinion of the non-examining psychologist relied upon by the ALJ suffered from "errors in logic similar to those made by the ALJ." *Id.* The matter presently before the Court is readily distinguishable from *Brownawell* in that the ALJ's rejection of the opinions that plaintiff is disabled by Dr. Barringer and Ms. Konopisos, an intern at the Counseling Center, is supported by substantial evidence as explicated in greater detail above, and that the ALJ properly evaluated the evidence contained in the record and the medical evidence relied upon in discrediting those opinions is not subject to the same criticism as that relied upon in *Brownawell*.

## VI.  CONCLUSION

Based on the foregoing, the decision of the ALJ is affirmed, and the Commissioner's motion [14] is granted. Plaintiff's motion [12] is denied. An appropriate order follows.

>  *s/Nora Barry Fischer*
>  Nora Barry Fischer
>  United States District Judge

cc/ecf: All Counsel of Record.

Dated: January 27, 2009